IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

FILED
U.S. DISTRICT COURT

2012 APR 25   P 2: 53

DISTRICT OF UTAH

DEPUTY CLERK

| | |
|---|---|
| DAVID WEBB,<br><br>      Plaintiff,<br><br>v.<br><br>WEBER COUNTY, CRAIG DEARDEN, JAN ZOGMAISTER, KERRY GIBSON, DEE SMITH, CAITLIN GOCKNOUR, NEIL GARNER, AMY WICKS, BART BLAIR, BRANDON STEPHENSON, DOUG STEPHENS, SUSIE VON HOOSER, TIMOTHY SCOTT, K. MURRAY, TERRY THOMPSON, KEVIN MCCLEOD, KEVIN BURTON, R. WEST, R. JOHNSON, R. GATES, A. FLATT, JON GREINER, JAMES RETALLICK, AND TWO JOHN DOES,<br><br>      Defendants. | Case No. 1:11-cv-00128-DB-SA<br><br><br>**REPORT AND RECOMMENDATION**<br><br>Magistrate Judge Samuel Alba |

Before the court are Plaintiff David Webb's Motion for Service of Process (Doc. 3), Motion to Appoint Counsel (Doc. 4), and Motion to amend his complaint (Doc. 9). Having carefully reviewed the pleadings in this matter, the court recommends that Webb's Motion for Service of Process be GRANTED IN PART AND DENIED IN PART, that Webb's Motion to Appoint Counsel be DENIED, and that Webb's Motion to amend his complaint be GRANTED. Pursuant to its screening capacity under 28 U.S.C. § 1915(e)(2), the court also recommends that certain claims and defendants be DISMISSED from the complaint, as explained below.

## PROCEDURAL BACKGROUND

Plaintiff Webb ("Webb") filed a complaint against several local government actors and law enforcement officers on August 15, 2011. On August 15, 2011, he also filed a Motion for Leave to Proceed in Forma Pauperis (Doc. 1), which was granted by Magistrate Judge Nuffer on August 23, 2011. That same day, August 23, 2011, Webb moved for the court to order service of process on all defendants and for appointment of counsel.

On September 21, 2011, Webb also moved to consolidate his case with another federal civil rights action ongoing in this court, Williams v. Weber County, et al. (Case # 1:11-cv-21). (Doc. 6). That motion was opposed by both the defendants and the plaintiffs in that case, (see Case Number 1:11-cv-21, Docs. 17, 18) and denied by Judge Waddoups, (see Case Number 1:11-cv-21, Doc. 20).

On September 28, 2011, Judge Dee Benson referred this case to Magistrate Judge Alba, pursuant to 28 U.S.C. § 636 (b)(1)(B), to prepare a Report and Recommendation for all matters up to and including dispositive matters, (Doc. 7).

On December 27, 2011, Webb moved to amend his complaint (Doc. 9).

On March 8, 2012, Magistrate Judge Alba ordered that Webb's Motion for Service of Process and Motion to Appoint Counsel be denied pending a full review of Webb's claims pursuant to 28 U.S.C. § 1915(d), (e)(2). (Doc. 10.)

## FACTUAL BACKGROUND

Webb alleges multiple violations of 42 U.S.C. § 1983 and state tort laws surrounding his arrest and detention in July of 2011. According to Webb's complaint, on July 20, 2011, Webb was visiting his mother at her apartment in Ogden, Utah when he was approached in the parking lot by one of his mother's neighbors. Pl.'s Complaint 25 (Doc. 5). This neighbor was apparently

2

involved in a volatile domestic dispute, and she frantically implored Webb to drive her and her child home. *Id.* Webb reluctantly agreed, and the three departed in Webb's mother's car. *Id.* at 26-27. Before reaching their destination, he was pulled over by an Ogden City Police Officer. *Id.* at 29. According to Webb, the Officer claims to have stopped him for a broken license-plate light. *Id.* The Officer elected to arrest Webb rather than cite him when Webb was unable to give a permanent residence address in Ogden. *Id.*

After being handcuffed and placed in a police cruiser, Webb observed the officers searching his mother's car. *Id.* at 31-32. He also observed that the license plate bulb was functioning properly. *Id.* at 31. Webb claims that the handcuffs were painfully tight and that he asked several times that they be loosened, with no response. *Id.* at 30-32. He was transported to the Weber County Correctional Facility, where he was strip-searched and his personal effects were taken and searched. *Id.* at 32-34. When the jail officials attempted to process Webb, he refused to answer questions, citing his "federal right not to provide . . . information." *Id.* at 35. He alleges that he was mistreated at the jail as a result of his refusal to answer processing questions. *See, e.g., id.* Specifically, he claims that he was put without shoes in a small concrete cell and denied access to the bathroom for approximately six hours. *Id.* at 35-36. Webb claims he was allowed to use the bathroom and call his mother only after "giving up his Constitutional Rights" by agreeing to have his fingerprints taken and to answer standard booking questions. *Id.* at 36-37.

According to his complaint, Webb was detained until July 26, 2011, when the prosecutor moved to drop charges during Webb's video conference with the court. *Id.* at 37.

Webb names twenty-five defendants, including the Weber County Government, three County Commissioners, the Weber County Attorney, seven members of the City Council, four

Police Officers (Two John Does), the Chief of Police, the Sheriff, an Undersheriff, five

Correctional Facility Officers, and his Public Defender.

## ANALYSIS

### A.  STANDARD OF REVIEW

Webb filed his complaint *in forma pauperis*.  Therefore, pursuant to 28 U.S.C. §

1915(e)(2), the court must screen the case and dismiss any claim it finds "fails to state a claim on

which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(ii); *see also Johnson v. Johnson*, 466

F.3d 1213 (10th Cir. 2003)(noting that district court dismissed certain claims and allowed others

to stand under § 1915(e) screening function).  When screening under § 1915(e)(2)(ii), the court

uses the same standard as under a Rule 12(b)(6) motion to dismiss.  *Kay v. Bemis*, 500 F.3d

1214, 1217 (10th Cir. 2007).

> [Under the 12b6 standard], a complaint must contain sufficient factual matter,
> accepted as true, to state a claim for relief that is plausible on its face. [The court]
> assume[s] the factual allegations are true and ask[s] whether it is plausible that the
> plaintiff is entitled to relief. The tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice.

*Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (citation and quotations omitted).

The elements of a 42 U.S.C. § 1983 claim are (1) defendants deprived plaintiff of a right

secured by the Constitution or laws of the United States and (2) defendants were acting under

color of state law.  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988).

As Webb is proceeding *pro se*, the court must construe his pleadings liberally, *Ledbetter*

*v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003), but it "will not supply additional factual

allegations to round out [his] complaint or construct a legal theory on [his] behalf," *Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

B.  Class Action Status

As a preliminary matter, the court notes that Webb has titled his complaint a "Class Action Civil Rights Complaint." As a *pro se* plaintiff, Webb is not eligible to be a class representative under Federal Rule of Civil Procedure 23(a)(4) because "the competence of a layman is clearly too limited to allow him to risk the rights of others." *Frymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation marks and citation omitted). Therefore, the court construes his complaint as an individual suit.

C.  Webb's Claims

In "Count I" of Webb's complaint, he alleges that he was subject to an illegal traffic stop in violation of his Fourth Amendment rights. As stated above, Webb's stop was ostensibly based on an equipment violation, i.e., his license-plate light was out.

In the context of a traffic stop, an officer may constitutionally stop a vehicle if he has a "reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow v. Illinois*, 528 U.S. 119, 123 (2000).

At this stage the court must accept as true Webb's claim that his light bulb was functioning properly at the time. *See Bixler*, 596 F.3d at 756. Without that objective justification, and with no other apparent justification, the officer could not constitutionally stop

Webb for investigation. *See Wardlow*, 528 U.S. at 123. Therefore, at this stage "Count 1" states a claim "plausible on its face," and survives § 1915(e) screening.

In his second claim ("Count 2"), Webb alleges that his "arrest, search and seizure" violated the Fourth Amendment for lack of probable cause. Because he addresses the search of his mother's car and the length of his detention in jail in other claims, and because he cites case-law relating to "pat-downs," the court assumes that Webb is referencing his arrest and the subsequent searches of his person in this claim.

It is well established that an officer may arrest an individual for even a minor criminal infraction . *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). It is also well established that an officer may constitutionally search an individual for weapons and contraband "incident to arrest." *See, e.g., United States v. Rollins*, 190 Fed App'x 739, 743 (10th Cir. 2006)(unpublished)(citing *Chimel v. Cal.*, 395 U.S. 752, 762-63 (1969). Therefore, the constitutionality of Webb's initial arrest and pat-down depend on whether Webb had committed a criminal offense (or some other probable cause for arrest was present). As Webb has alleged the officer lacked any justification, these claims are also "plausible" on their face. *See, e.g., Cottrell v. Kaysville*, 994 F.2d 730, 734 (10th Cir. 1993) (reversing summary judgment on § 1983 claim where factual disputes exist regarding probable cause for arrest).

Regarding Webb's strip-search at the jail, the Supreme Court recently upheld the constitutionality of a jail policy requiring strip searches for all inmates entering the general jail population, even for minor offenses. *See Florence v. Bd. Of Chosen Freeholders of Burlington*, No. 10-945, 2012 U.S. LEXIS 2712, *34 (April 2, 2012). However, the court specifically reserved the question of whether "it is always reasonable, without regard to the offense or the reason for detention, to strip search an arrestee before the arrestee's detention has been reviewed

by a judicial officer." *Florence*, 2012 U.S. LEXIS at *39 (Alito, J., concurring). The Tenth

Circuit has noted that even when an individual has been legally arrested for a criminal offense,

strip searches may be unconstitutional when the offense is a minor traffic violation. *See*

*Chapman v. Nichols*, 989 F.2d 393, 399 (10th Cir. 1993). It has also observed that "jails can

meet the minimal security concerns they may have with minor offenders by means of a less

intrusive pat-down search." *Morreale v. City of Cripple Creek*, 1997 U.S. App. LEXIS 12229,

*21 (10th Cir. 1997)(unpublished)(internal quotation marks omitted). Further, the petitioner has

alleged that he witnessed several other bookings in the jail which did not involve strip searches,

adding some plausibility to his claim of being intentionally harassed. *See Hudson v. Palmer*, 468

U.S 517, 528 (1984)("[I]ntentional harassment of even the most hardened criminals cannot be

tolerated by a civilized society."). Therefore, Webb's allegation of having been strip-searched at

the jail after his arrest for a vehicle equipment violation but before having his detention reviewed

by a judicial officer states a plausible claim, regardless of whether his arrest was justified in the

first instance.

Webb's claim of excessive force, based on the tightness of his handcuffs, is also

essentially a Fourth Amendment claim, because the officer's use of force is based on "Fourth

Amendment standards of objective reasonableness." *Morreale v. City of Cripple Creek*, 1997

U.S. App. LEXIS 12229, *16 (unpublished) (citing Graham v. Connor, 490 U.S. 386, 396-97

(1989)). The Tenth Circuit assesses the reasonableness of the officer's use of force based on "the

severity of the crime, whether the subject posed an immediate threat to the officer's safety, and

whether the subject was resisting arrest." *Morreale* 1997 U.S. App. LEXIS at *16 (citing *Wilson*

*v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995)). According to his complaint, Webb was arrested

for a very minor violation, complied readily with the officer's requests, and posed no safety threat. The court therefore finds Webb's claim of excessive force plausible on its face.

In Webb's third claim, he argues that he was unconstitutionally detained without a prompt judicial determination of probable cause. In general, determinations of probable cause that happen within 48 hours of arrest are presumptively legal, while those made after 48 hours require the government to demonstrate extraordinary circumstances. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). Webb does not allege when, exactly, his probable cause determination took place, but he does allege that he was not taken before a judge until the morning of July 26, 2011, five and a half days after his initial arrest. *See* Pl.'s Complaint 37. Therefore, the court finds this claim also plausible.

In his fourth claim, Webb alleges that the defendants "violated Miranda v. Arizona" by failing to Mirandize defendant until after his arrest. This, he argues, was a violation of his "Federal Constitutional rights." *Id.* at 43. However, the Constitution only guarantees Webb "the right to be free from self-incrimination," not the right to receive Miranda warnings. *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976). An officer's failure to give Miranda warnings is not a Constitutional violation when un-Mirandized statements are not used in court. *See e.g., id.*; *Lucero v. Gunter*, 17 F.3d 1347, 1350-51 (10th Cir. 1994). The court therefore recommends dismissal of this claim pursuant to § 1915(e)(2)(ii) for failure to state a claim on which relief can be granted.

Webb's fifth claim is titled simply "Civil Rights Violated," and provides general case-law regarding the Fourth, Fifth, Sixth and Fourteenth Amendments. Pl.'s Complaint 45-46. As stated above, the court must read *pro se* complaints liberally, but it is not free to "supply additional factual allegations to round out [his] complaint or construct a legal theory on [his]

8

behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Because this claim appears to be a reiteration of his other more specific claims, and, on its own, it does not allege any facts on which a plausible claim may rest, the court recommends its dismissal.

In his sixth claim, Webb alleges that his Fourth Amendment rights were violated by the warrantless search of his mother's vehicle. Though police officers may constitutionally inventory the contents of a vehicle "they have taken into their custody or are about to impound," *See United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003)(quoting Wayne R. LaFave, *Search and Seizure* § 7.4 at 536 (3d ed. 1996 & Supp. 2003)), like Webb's first and second claims, the propriety of this "inventory" also depends on the legality of the arrest that prompted it. Further, the Tenth Circuit has previously stated that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence," but must be "designed to produce an inventory." *Tueller*, 349 F.3d at 1243. Based on Webb's description of the incident, it is not at all clear that the police were producing any "inventory." Nor did the officers have constitutional justification for a search "incident" to arrest, based on Webb's complaint, because Webb was handcuffed in the police cruiser at the time, and there was no reasonable belief that evidence of his offense could be found in the car. *See Arizona v. Gant*, 556 U.S. 332, 351(2009)(holding that police may only search a vehicle "incident" to arrest when "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest"). For these reasons, the court finds this a plausible claim.

Webb's seventh claim is styled, simply, "Resisting Unlawful Arrest." Resisting unlawful arrest is a common law principle under which a citizen can "use reasonable force to resist an illegal arrest." 5 AM. JUR. 2D *Arrest* § 89 (2012). It may be useful as a defense to criminal

charges, *see, e.g., Maryland v. Weigmann*, 350 Md. 585 (Maryland Ct. App 1998), which Webb

is not facing here. He does not state why it might be applicable to his complaint. Consequently,

the court recommends dismissal of this claim under § 1915(e)(2)(ii) for failure to state a claim.

Webb's eighth and ninth claims are state tort claims of false imprisonment and false

arrest. Though the existence of probable cause is a defense to these claims in Utah, see *Terry v.*

*Zions Coop Mercantile Inst.*, 605 P.2d 314, 320 (Utah 1979), *overruled on other grounds by*

*McFarland v. Skaggs Cos.*, 678 P.2d 298, 304-05 (Utah 1984), as explained above, Webb's

factual allegation that his vehicle equipment was functioning properly is entitled to deference at

this stage. Therefore, the court finds these claims plausible.

Webb's tenth claim is a state tort claim for intentional infliction of emotional distress.

The court finds that Webb has stated a plausible claim for relief. *See Bennett v. Jones, Waldo,*

*Holbrook & McDonough*, 70 P.3d 17, 30 (Utah 2003) (explaining the elements of intentional

infliction of emotional distress in Utah).

After his numbered claims, Webb also attempts to "incorporate[] the federal civil rights

complaint by Williams v. Weber County, et al. Case # 1:11-cv-0021," which is a §1983 claim by

several individuals alleging that Weber County, et al., violated their Sixth Amendment rights to

effective assistance of counsel. *See* Case # 1:11-cv-0021, Pl.'s Complaint 1-6 (Doc. 3).

However, one of the elements of a § 1983 claim is deprivation of a constitutional or statutory

right, *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988), and Webb has not alleged any facts

showing that he himself suffered a deprivation of his Sixth Amendment right to effective

assistance of counsel. On the contrary, he was released from custody and charges were

dismissed without prejudice during his first appearance in court. Accordingly, Webb has failed

to state a claim for which relief can be granted. *See Warth v Seldin*, 495 F.2d 1187, 1193 (2nd

Cir. 1974), *aff'd* 422 U.S. 490 (1975) (holding that plaintiffs have no standing to sue under 42

U.S.C. § 1983 where plaintiffs have not suffered "from any of the specific, overt acts alleged.")

    D.  Defendants

    Having screened Webb's constitutional claims under § 1915(e), the court now screens the

named defendants before authorizing service of process on them.  Webb's first four named

defendants are The Weber County Government; Craig Dearden, Weber County Commissioner,

in his official capacity; Jan Zogmaister, Weber County Commissioner, in her official capacity;

and Kerry Gibson, Weber County Commissioner, in his official capacity.  Suits against

government actors in their official capacity are suits against the government agency which

employs them.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore,

Webb's first four defendants are one and the same: the Weber County Government.

Webb alleges that the County Government "failed to ensure constitutionally adequate legal

representation to indigent plaintiffs [sic] with criminal charges pending . . . ."  Pl.'s Complaint 2-

3 (Doc. 5).  As the court has recommended that Webb's Sixth Amendment claim for ineffective

assistance of counsel be denied because he lacks standing, the court also recommends that the

Weber County Government and its Commissioners (Defendants 1-4) be dismissed from the case

because he fails to state a claim against them for which relief can be granted.

    Webb's Fifth Defendant is Dee Smith, Weber County Attorney, whom he sues for

"ignoring the U.S. Constitutional rights violated and . . . persecuting criminal cases founded on

illegal sreach [sic] and seizures. . . ." *Id.* at 6.  Webb alleges no factual basis for a claim against

Smith.  Insofar as the court can determine from Webb's complaint, Smith decided to seek

dismissal of all charges during Webb's initial court appearance.  Further, state prosecutors have

absolute immunity against § 1983 claims related to "activities intimately associated with the

judicial process." *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (internal punctuation and citation omitted). Therefore, the court recommends dismissing Dee Smith from the action for Webb's failure to state a claim against him for which relief can be granted.

Webb's 6th-12th Defendants are Ogden City Council Representatives, sued in their official capacity: Caitlin Gochnour, Neil Garner, Amy Wicks, Bart Blair, Brandon Stephenson, Doug Stephens, and Susie Von Hooser. As stated above, official capacity suits are actually suits against the employing agency. Therefore, these are suits against the City of Ogden. The Supreme Court has established that cities and local government bodies are "persons" suable under § 1983. *Monell v. Dept of Social Services of City of New York*, 436 U.S. 658, 690 (1978). However, a city cannot be held liable "for an injury inflicted solely by its employees or agents." *Id.* at 694. "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal punctuation and citation omitted).

Further, a plaintiff must "demonstrate a direct causal link between the municipal action and deprivation of federal rights." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998), *superseded by statute on other grounds as stated in Smith v. Bd. Of County Comm'rs*, 2002 U.S. Dist. LEXIS 25076 (D. Kan. 2002). Though a "municipal action" may be premised on inadequate training or supervision, such a claim must also show that the relevant training or supervision policy "reflected a deliberate or conscious choice by the municipality." *City of Canton*, 489 U.S. at 389; *see also Barney*, 143 F.3d at 1307 (explaining that deliberate or conscious choice may be demonstrated by showing the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation"). Webb's alleged facts do not show how a municipal policy or custom caused a

12

violation of his federal rights.  Instead, he argues only that the city "failed to ensure [his rights] would be upheld by . . . Ogden City Police Officers."  Pl.'s Complaint 13.  This does not meet the standard set forth above for a § 1983 claim against a municipality.

Furthermore, the City cannot be held liable, under a theory of *respondeat superior*, for Webb's state-law tort claims against the individual police officers, because it is immune under Utah's General Immunity Act.  *See* Utah Code 63G-7-301(5)(b) (2012); *see also Oliver v. Woods*, 21 F. Supp. 2d 1325, 1332 (D. Utah 1998), *rev'd on other grounds* 209 F.3d 1179 (2000).  Subsequently, the court recommends dismissal of Defendants 6-12 from the action, because Webb has failed to state a claim against them for which relief can be granted.

Webb's 13th-24th Defendants are various law enforcement officials involved in Webb's arrest, search, and detention; or in supervisory positions.  Webb does not specify whether these defendants are being sued in their official or individual capacities.  As it must construe his *pro se* complaint liberally, *Ledbetter,* 318 F.3d at 1187, the court assumes he is suing them in both capacities.  As far as the law enforcement officers are being sued in their official capacities, such suits are against the city and county government. *Will*, 491 U.S. at 71.  As explained above, the court finds that Webb has not stated a plausible claim for which relief can be granted against either the City or County.

Insofar as the law enforcement officers are sued in their individual capacities, the court notes that they may well hold qualified immunity claims for either the § 1983 claims or the state tort-law claims, however the burden is on the defendant to raise claims of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  "[D]ismissal of the complaint pursuant to 28 U.S.C. § 1915 is not appropriate in such cases [where a qualified immunity defense has not yet been pled]." *Henrikson v. Bentley*, 644 F.2d 852, 856 (10th Cir. 1981).  Therefore, the court finds that

13

Webb has stated individual capacity claims against these defendants plausible enough to survive § 1915 screening.

Webb names James M. Retallick, his Public Defender, as his 25th defendant. According to Webb, Retallick deprived him of his Sixth Amendment Right to the effective assistance of counsel by failing "to submit a motion to suppress evidence . . . [which] would have allowed for the charges to have been dismissed with prejudice instead of . . . with a perpetual investigation." Though the court has already recommended that Webb's Sixth Amendment claims be dismissed because he lacks standing, it also notes that public defenders are not acting "under color of state law," for § 1983 purposes, when they are "performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981). Consequently, the court recommends dismissal of Retallick from the action because Webb has failed to state a claim against him for which relief can be granted.

E.  Webb's Motion to Amend the Complaint.

Webb seeks to amend his complaint by adding "Class Action Allegations" and also by adding another claim, "Count XI." *See* Pl.'s Motion to Amend 1-2 (Doc. 9). Webb is entitled to amend his complaint as a matter of course. *See* Fed. R. Civ. Pro. 15(a)(1). However, taking Webb's proposed amendments into consideration does not alter the court's current recommendations. As stated above, Webb is ineligible for class action status, and so an amendment to add class-action-related allegations is not of consequence. Regarding the other claim he wishes to add, the court finds that he is actually seeking to supplement a claim already in his complaint, against police chief Jon Greiner (*See* Pl.'s Complaint 21-22), with additional factual allegations. Those factual allegations involve the Hatch Act and Greiner's use of federal funds. Pl.'s Motion to Amend 1-2 (Doc. 9). Those factual allegations do not appear to relate to

14

any policy or supervisory-related action with a bearing on Webb's claims.  As such, they do not alter the court's recommendation to dismiss Jon Greiner in his official capacity and retain him as a defendant in his individual capacity.

     F.  Webb's Motion to Appoint Counsel.

Webb's Motion to Appoint Counsel was denied by this court on March 8, 2012 (Doc. 10).  The court recommends reaffirming that order for the same reasons stated therein.

<strong>CONCLUSION</strong>

     Based on the above analysis, the court **RECOMMENDS** that Webb's Motion to Appoint Counsel (Doc. 4) be **DENIED** at this time; that Webb's Motion to Amend Complaint (Doc. 9) be **GRANTED**; that Webb's Motion for Service of Process (Doc. 3) be **GRANTED in part and DENIED in part**, as specified below; and **RECOMMENDS** that certain complaints and defendants be **DISMISSED** from the action, pursuant to 28 U.S.C. § 1915(e)(2)(ii), for failure to state a claim against them for which relief can be granted.

     Specifically, the court **RECOMMENDS** that:

1. Webb's fourth claim, "Count IV," alleging a violation of Miranda v. Arizona, be **DISMISSED**;

2. Webb's fifth claim, "Count V," alleging "Civil Rights Violated," be **DISMISSED**;

3. Webb's seventh claim, "Count VII," titled "Resisting Unlawful Arrest," be **DISMISSED**;

4. Webb's attempt to incorporate the Sixth Amendment claim from case #1:11cv0021 be **DISMISSED**;

5. Defendants 1-4, Weber County, Craig Dearden, Jan Zogmaister and Kerry Gibson, be **DISMISSED**;

6. Defendant 5, Dee Smith, Weber County Attorney, be **DISMISSED**;

15

7.  Defendants 6-12, Caitlin Gochnour, Neil Garner, Amy Wicks, Bart Blair, Brandon Stephenson, Doug Stephens, and Susie Von Hooser, be **DISMISSED**;

8.  Defendants 13-24, Timothy Scott, K. Murray, John Doe Officer #1, Terry Thompson, Kevin McCleod, Kevin Burton, R. West, R. Johnson, R. Gates, A. Flatt, Jon Greiner, and John Doe Officer #2, be **DISMISSED** in their official capacities;

9.  Defendant 25, James Retallick, be **DISMISSED**;

10.  the remaining Defendants (Defendants 13-24, in their individual capacities) be served with process as to the remaining claims, once the complaint is appropriately amended.

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. §636(b), within fourteen days of receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 25th day of April 2012.

BY THE COURT:

SAMUEL ALBA
United States Magistrate Judge

16