IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DAVID WEBB,<br><br>      Plaintiff,<br><br>v.<br><br>TIMOTHY SCOTT, et al.,<br><br>      Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 1:11-cv-00128-DB-DBP<br><br>District Judge Dee Benson<br><br>Magistrate Judge Dustin B. Pead |

## I. INTRODUCTION

This civil rights matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B). Pro se Plaintiff is David Webb. The Court splits Defendants into three groups. The Ogden City Defendants are the following: (1) Timothy Scott, a police officer with the Ogden City Police Department; (2) K. Murray, a police officer with the Ogden City Police Department; and (3) Jon J. Greiner, chief of police for the Ogden City Police Department.

The Weber County Defendants are the following: (1) Terry L. Thompson, the Weber County sheriff; (2) Kevin McCleod, the Weber County undersheriff; (3) Kevin Burton, the corrections division chief deputy for Weber County Correctional Facility; (4) R. West, a sergeant at Weber County Correctional Facility; (5) R. Johnson, a sergeant at Weber County Correctional Facility; and (6) A. Flatt, a correctional officer at Weber County Correctional Facility.

The third group of Defendants includes R. Gates, a correctional officer at Weber County Correctional Facility, and three John Doe law enforcement officers.

The Court now considers Plaintiff's motions to hold Defendants liable for non-preservation of relevant discovery. (Docket Nos. 41; 52; 55.) In essence, Plaintiff asks the District Court to enter a final judgment against Defendants because they destroyed/altered evidence. The Court also considers Plaintiff's motion to authenticate dash camera recordings submitted by the Ogden City Defendants. (Dkt. No. 107.) For the reasons set forth below, this Court **RECOMMENDS** that the District Court **DENY** Plaintiff's motions.

## II. PROCEDURAL HISTORY

Plaintiff filed his original complaint on August 23, 2011. (Dkt. No. 5.) The original complaint was never served on Defendants due to procedural delays in screening the complaint under 28 U.S.C. § 1915(e)(2). On May 15, 2013, Plaintiff filed his second amended complaint. (Dkt. No. 23.) On May 24, 2013, the U.S. Marshals Service served Defendants the second amended complaint. (Dkt. Nos. 26-27.)[1] Therefore, Defendants did not receive formal notice about Plaintiff's lawsuit until May 24, 2013.

## III. STATEMENT OF LAW REGARDING SPOLIATION

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Blangsted v. Snowmass-Wildcat Fire Prot. Dist.*, 642 F. Supp. 2d 1250, 1259-60 (D. Colo. 2009) (quotation omitted).

A district court possesses inherent power to sanction a party that destroys or loses evidence. *See Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 631 (D. Utah 1998), *rev'd in part on*

---

[1] The U.S. Marshals Service attempted to serve Defendant Gates at the Weber County Jail but the Weber County Jail does not have an employee named Gates. (Dkt. No. 25.)

*other grounds*, 222 F.3d 1262 (10th Cir. 2000). However, the party requesting spoliation sanctions must still prove the opposing party's spoliation by a preponderance of the evidence. *See United States v. Koch Indus., Inc.*, 197 F.R.D. 463, 486 (N.D. Okla. 1998).

When deciding whether to impose spoliation sanctions, a court should first determine whether the evidence "would be relevant to an issue at trial." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007). If so, the court may impose spoliation sanctions "where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citation omitted).

Where the aggrieved party seeks a severe spoliation sanction such as an adverse inference instruction, it must prove the opposing party destroyed evidence in "bad faith" rather than through "[m]ere negligence." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). However, a court may still "impose lesser sanctions" where spoliation occurred without bad faith. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). *See, e.g.*, *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988-989 (10th Cir. 2006) (striking testimony as spoliation sanction where no bad faith shown).

### IV. PLAINTIFF'S FIRST AND SECOND MOTIONS TO HOLD DEFENDANTS LIABLE FOR NON-PRESERVATION OF RELEVANT DISCOVERY

Plaintiff moves to hold all Defendants liable for non-preservation of relevant discovery (Dkt. Nos. 41; 52) because "the [v]ideos containing the images of Plaintiff being brought, booked and detained within the Weber County Correctional Facility" between July 20, 2011 and July 21, 2011 "have been destroyed and no longer are available as [d]iscoverable [e]vidence . . . ." (Dkt.

No. 41 at 1.) Plaintiff seeks a "finding of liability" against Defendants "as a matter of [l]aw" for their non-preservation. (*Id.* at 2.)

### A. Motions as They Relate to Ogden City Defendants

The Ogden City Defendants oppose Plaintiff's motions. (Dkt. Nos. 44; 56.) They claim they neither operate nor control Weber County Correctional Facility's video images. (Dkt. Nos. 44 at 1; 56 at 1.) Therefore, "[t]here is no evidence that [they] had possession, custody, [or] control of the tapes or the ability or duty to preserve them." (Dkt. No. 44 at 2.) The Court agrees with the Ogden City Defendants' reasoning. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's motions as they pertain to the Ogden City Defendants. (Dkt. Nos. 41; 52.)

### B. Motions as They Relate to Weber County Defendants

The Weber County Defendants also oppose Plaintiff's motions. (Dkt. No. 49.) They argue they had "no duty to preserve any jail surveillance videos" from Plaintiff's July 2011 incarceration because they "were not aware that litigation was imminent" at that time. (*Id.* at 3.)

The Weber County Defendants only received formal notice about Plaintiff's lawsuit in May 2013 - nearly two years after Plaintiff's incarceration. By that time, the surveillance videos had been automatically overwritten "as a part of the routine operation of the video surveillance system at the jail . . . ." (*Id.* at 2.) Defendant Thompson attests that the automatic overwrite "likely occurred about six months after July 2011" (Dkt. No. 85 ¶ 4) when the "memory in the hard drive ha[d] been used up" (*id.* ¶ 2). Defendant Thompson emphasizes that no one in the Weber County Sheriff's Office "control[s]" this overwrite process, and "[n]o person took any action to cause the recording over . . . ." (*Id.* ¶¶ 3, 5.)

Plaintiff counters that the Weber County Defendants received informal notice about the present litigation long before May 2013. As such, they should have preserved the jail surveillance videos prior to their automatic overwrite.

For instance, Plaintiff argues that he notified the Weber County Defendants about this litigation as early as August 17, 2011. On that date, he allegedly wrote a letter about his unlawful incarceration to Defendant Thompson and to Dee W. Smith, the Attorney for Weber County, Utah. (Dkt. No. 41, Ex. E.)

However, under penalty of perjury, Defendant Thompson claims that he does not remember receiving this letter, and that his office "has no record of ever receiving this letter." (Dkt. No. 50 ¶ 8.) Plaintiff fails to prove that he directly mailed or otherwise delivered this letter to the Weber County Defendants. Indeed, while Plaintiff avers that he hand delivered the letter to Smith's office, he fails to discuss whether he sent the letter to any of the Weber County Defendants. (Dkt. Nos. 54 ¶ 2; 71.)

Moreover, even assuming that Plaintiff delivered the letter to Smith, this delivery fails to prove that the Weber County Defendants received notice about the letter through Smith. Plaintiff presents no evidence that Smith turned the letter over to the Weber County Defendants. In fact, Defendant Thompson attests that he only saw the letter for the first time when Plaintiff attached it to his current spoliation motion. (Dkt. No. 50 ¶ 8.) Additionally, Smith is neither an active party to the current litigation nor legal counsel for any party involved.

Despite failing to demonstrate that the Weber County Defendants directly received the letter, Plaintiff argues that they indirectly received the letter through their counsel, Frank D. Mylar. (Dkt. No. 52.) On December 12, 2011, Plaintiff filed the letter in unrelated ineffective assistance

of counsel litigation before the District of Utah where Mylar acted as counsel for one of the parties.

The Court concludes that Plaintiff's December 2011 filing fails to prove that the Weber County Defendants received notice about the letter through Mylar. The Weber County Defendants only retained Mylar as counsel in this case on June 17, 2013 - long after the surveillance videos were overwritten. (Dkt. No. 49 at 4.)

Based on the evidence before it, the Court finds that the Weber County Defendants' duty to preserve the July 2011 surveillance videos triggered on May 24, 2013. This was the first time they received any notice about this litigation. As such, the automatic overwrite of the surveillance videos prior to May 24, 2013 does not constitute spoliation. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's motions as they pertain to the Weber County Defendants. (Dkt. Nos. 41; 52.)

### V. PLAINTIFF'S THIRD MOTION TO HOLD OGDEN CITY DEFENDANTS LIABLE FOR NON-PRESERVATION OF RELEVANT DISCOVERY

Plaintiff moves to hold the Ogden City Defendants liable for non-preservation of relevant discovery because they "intentionally tampered with and deleted" the dash camera video footage that recorded Plaintiff's July 20, 2011 arrest. (Dkt. No. 55 at 1.) Plaintiff specifies that Defendant Murray's dash camera video cuts out early, "leaving fifteen to twenty . . . more minutes of Plaintiff being in the custody of [Defendant] Murray before exiting the [p]olice [c]ar at the Weber County Correctional Facility . . . ." (*Id.* at 2.) Plaintiff also alleges that the dash camera video for an Ogden City police officer named "Copier" is only one minute and eight seconds long, "showing his travels coming to the scene . . . where Plaintiff was pulled over by" Defendant Murray, but concluding "before Officer Copier arrives at this scene . . . ." (*Id.*) Plaintiff also claims that certain excerpts from the videos "have been tampered with/deleted,

and/or obstructed in some format to . . . not reveal the accurate accounts that ensued" during Plaintiff's arrest.  (*Id.*)

The Ogden City Defendants oppose Plaintiff's motion.  (Dkt. No. 62.)  Defendant Murray submitted an affidavit acknowledging that he does "not remember exactly when or why [he] turned off the sound or the camera during [his] interaction with Plaintiff."  (Dkt. No. 86 ¶ 7.)  However, he explains his "practice [is] to turn off [his] wireless microphone once the suspect is placed into a patrol car and no other people are being interviewed."  (*Id.* ¶ 11.)  Similarly, his "practice is to turn off [his] dash camera just before [he] begin[s] transporting an arrestee to jail." (*Id.* ¶ 7.)  He claims his encounter with Plaintiff conformed to his practices.  (*Id.* ¶¶ 8, 13.)

Officer Copier submitted an affidavit stating he does "not remember when [he] activated [his] dash camera and do[es] not know why the camera stopped recording during the stop with" Plaintiff.  (Dkt. No. 87 ¶ 7.)  He explains that his dash camera automatically activates when he turns on his overhead lights.  (*Id.* ¶ 9.)  Generally, "when [he] provide[s] assistance to another officer on a traffic stop, [he] do[es] not [] activate [his] overhead lights . . . en route to the call." (*Id.* ¶ 7.)  He sometimes "activate[s] [his] emergency overhead lights to safely pass through an intersection" en route to a call, but " "[a]fter getting through the . . . intersection, [he] then shut[s] [the] lights off, and deactivate[s] the camera . . . ."  (*Id.* ¶¶ 8-9.)  "When [he] arrive[s] on scene to assist another officer, [he] generally only activate[s] [his] rear-facing overhead flashing emergency lights to warn traffic from behind.  The camera does not automatically activate in this instance."  (Dkt. No. 87 ¶ 12.)  His believes his actions during Plaintiff's arrest conformed to this practice.  (*Id.* ¶ 13.)

Both Defendant Murray and Officer Copier aver they "did not delete any portion – visual or audio – from the recording made of" their "interaction with Plaintiff on July 20, 2011."  (Dkt.

Nos. 86 ¶ 15; 87 ¶ 14.) Moreover, Jess McClelland, the customer account supervisor in the Ogden City IT Division, attests that "[i]t is impossible for officers to delete or edit footage taken by the dash cam recorders in their vehicles . . . ." (Dkt. No. 63-1 ¶ 9.) Rather, "[a]n officer may turn off the camera before the arrest is completed." (*Id.* ¶ 6.)

McClelland further explains that "[o]nce a dash cam hard drive is at capacity, an officer removes the entire hard drive, which is downloaded at docking stations throughout the department." (*Id.* ¶ 11.) Teresa Smullin, an Ogden City Police Department evidence custodian, attests that "[t]here is no way for an officer to only download portions of the hard drive." (Dkt. No. 62-2 ¶ 3.) Smullin confirms that Defendant Murray's hard drive containing footage from Plaintiff's arrest "was downloaded onto the server on August 18, 2011 . . . ." (*Id.* ¶ 4.) "Officer Copier's hard drive . . . was downloaded onto the server on August 31, 2011 . . . ." (*Id.* ¶ 5.)

The Court thoroughly reviewed these affidavits and the dash camera footage at Docket No. 92. Based on this review, the Court is convinced that altering or deleting the existing footage was not possible. Moreover, the existing footage conforms to the accounts in Defendant Murray's and Officer Copier's affidavits. That is, they turned off their microphones and dash cameras in conformity with their general practices for doing so. Whether they should change their general practices to avoid situations like this is a separate issue from spoliation.

Additionally, Plaintiff fails to sufficiently argue that, during his arrest, Defendant Murray and Officer Copier should have recorded additional footage because they knew, or reasonably should have foreseen, that litigation was imminent. *See Grabenstein v. Arrow Elecs., Inc.*, No. 10-cv-02348-MSK-KLM, 2012 WL 1388595, at *4 (D. Colo. Apr. 23, 2012) (unpublished) ("[T]he duty to preserve relevant documents should require more than a mere possibility of litigation."). As such, the Court concludes that neither Defendant Murray nor Officer Copier bore a duty to

record additional dash camera footage to avoid spoliation. Even if such a duty existed, Plaintiff fails to articulate how he suffered prejudice from any failure to record additional footage.

Given the aforementioned circumstances, the Court concludes that no spoliation occurred with regards to Defendant Murray's and Officer Copier's dash camera footage of Plaintiff's arrest. *See Avery v. Taylor*, No. 10-10447, 2011 WL 4576310, at *7-8 (E.D. Mich. Sept. 30, 2011) (unpublished) (refusing to grant spoliation sanctions where a gap in a dash camera recording occurred during a plaintiff's traffic stop because the plaintiff failed to show defendants destroyed that portion of the recording in bad faith). Accordingly, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's spoliation motion. (Dkt. No. 55.)

## VI. PLAINTIFF'S MOTION FOR EVIDENCE AUTHENTICATION

Related to his spoliation motion (Dkt. No. 55), Plaintiff also moves the Court to order that Defendant Murray's and Officer Copier's dash camera recordings (Dkt. No. 92) "be authenticated by an expert . . . ." (Dkt. No. 107 at 1.) Plaintiff claims the "[t]ampering" with the recordings, as described in his spoliation motion, necessitates such an authentication. (*Id.*)

The Ogden City and Weber County Defendants oppose Plaintiff's motion. (Dkt. Nos. 110; 115.) The Ogden City Defendants emphasize "[t]here is no authority for the proposition Plaintiff advances." (Dkt. No. 110 at 2.) Indeed, the cases Plaintiff cites to support his motion all relate to authenticating evidence via a chain of custody in criminal proceedings. (Dkt. No. 107, Ex. A.) The Court sympathizes with Plaintiff's difficulties in obtaining an expert to authenticate the recordings. (*Id.*, Ex. B.) Nevertheless, as the proponent of the claim about evidence tampering, Plaintiff bears the burden to prove the claim in these civil proceedings.

Further weighing against Plaintiff's motion, this Court harbors no concerns about the recordings' authenticity. In light of the affidavits provided by Defendant Murray, Officer

Copier, McClelland, and Smullin (Dkt. Nos. 62-2; 63-1; 86-87), the Court is sufficiently convinced that the recordings could not be altered or deleted. Smullin even submitted a supplemental affidavit confirming that the dash camera recordings at Docket No. 92 "are true and correct cop[ies]" of Defendant Murray's and Officer Copier's "dash camera video[s] from the Ogden Police Department Evidence archive server." (Dkt. No. 92 at 7.) For all these reasons, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's motion to order an independent expert to authenticate the dash camera recordings. (Dkt. No. 107.)[2]

## VII. RECOMMENDATIONS

For the reasons set forth above, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's motions to hold Defendants liable for non-preservation of relevant discovery. (Dkt. Nos. 41; 52; 55.) The Court further **RECOMMENDS** that the District Court **DENY** Plaintiff's motion to authenticate the dash camera recordings. (Dkt. No. 107.)

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 14th day of March, 2014.

By the Court:

Dustin B. Pead
United States Magistrate Judge

---

[2] The Court issues its Report and Recommendation on this motion (Dkt. No. 107) prior to the reply period for the motion expiring. However, the Court does not believe a reply would help Plaintiff's motion due to the dearth of on-point authority and the Court's satisfaction with the recordings' authenticity.