IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DAVID WEBB,<br><br>    Plaintiff,<br><br>v.<br><br>TIMOTHY SCOTT, et al.,<br><br>    Defendants. | MEMORANDUM DECISION<br><br>Case No. 1:11-cv-00128-DB-DBP<br><br>District Judge Dee Benson<br><br>Magistrate Judge Dustin B. Pead |

## I.    INTRODUCTION

This civil rights matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B).  (Docket

Nos. 74; 78; 89; 93; 95.)  Pro se Plaintiff is David Webb.  The Court splits Defendants into three

groups.  The Ogden City Defendants are the following: (1) Timothy Scott, a police officer with

the Ogden City Police Department; (2) K. Murray, a police officer with the Ogden City Police

Department; and (3) Jon J. Greiner, chief of police for the Ogden City Police Department.

The Weber County Defendants are the following: (1) Terry L. Thompson, the Weber County

sheriff; (2) Kevin McCleod, the Weber County undersheriff; (3) Kevin Burton, the corrections

division chief deputy for Weber County Correctional Facility; (4) R. West, a sergeant at Weber

County Correctional Facility; (5) R. Johnson, a sergeant at Weber County Correctional Facility;

and (6) A. Flatt, a correctional officer at Weber County Correctional Facility.

The third group of Defendants includes R. Gates, a correctional officer at Weber County Correctional Facility, and three John Doe law enforcement officers.

The Court now considers Plaintiff's five motions to compel. (Dkt. Nos. 74; 78; 89; 93; 95.) For the reasons set forth below, the Court **DENIES** Plaintiff's motions.

## II.    PLAINTIFF'S FIRST MOTION TO COMPEL

Plaintiff filed his first motion to compel against both the Ogden City Defendants and the Weber County Defendants because they objected to numerous requests for document production ("RDPs"). (Dkt. No. 74.) For the reasons stated below, the Court **DENIES** Plaintiff's motion.

### A.  Motion as it Relates to the Ogden City Defendants

### i.    RDPs Regarding Traffic Stops

Plaintiff served two RDPs on the Ogden City Defendants that ask for all the traffic stops that Defendant Murray performed three months before Plaintiff's July 20, 2011 traffic stop, three months after the stop, and from May 2013 to the present. (Dkt. No. 81 at 2.) The RDPs also seek information about the "initial determination[s]" for the traffic stops and the "age and ethnic group of the driver[s] of the vehicles." (*Id.*)

Plaintiff argues such information is relevant to his 42 U.S.C. § 1985 claim that the Ogden City Defendants "jointly conspired to violate Plaintiff's civil rights" as well as his 42 U.S.C. § 1986 claim that the Ogden City Defendants neglected to prevent a 42 U.S.C. § 1985 violation (Dkt. No. 23 at 35). (Dkt. No. 74 at 1.) Moreover, Plaintiff asserts that such information could show a conspiracy to selectively enforce the law based on considerations such as race. (*Id.* at 2.)

After reviewing Plaintiff's complaint, this Court found only one factual allegation about conspiracy. Plaintiff's complaint alleges that Defendant Murray "conspire[d] to not disclose the excess force used by" him when he hand-cuffed Plaintiff too tightly. (Dkt. No. 23 at 22.)

The Ogden City Defendants cite this scant allegation to argue that Defendant Murray's other traffic stops are irrelevant to Plaintiff's conspiracy claims under 42 U.S.C. §§ 1985 and 1986. (Dkt. No. 81 at 6.)  They assert the stops "have nothing to do with the alleged use of excessive force" against Plaintiff during his arrest.  (*Id.*)  Therefore, "there is nothing about [the other traffic stops] that would show [Defendant Murray] conspired with another to hide" his excessive force.  (*Id.*)

The Court agrees with the Ogden City Defendants' reasoning.  Defendant Murray's other traffic stops bear no apparent relevance to Plaintiff's excessive force based conspiracy claims. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (noting that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer *on the scene*," and elaborating that "the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable *in light of the facts and circumstances confronting them*, without regard to their underlying intent or motivation.") (emphasis added) (quotations omitted).

The Court recognizes that Defendant Murray's other traffic stops may be relevant to an allegation about a racially motivated selective enforcement conspiracy.  However, the Court cannot infer the existence of such an allegation where Plaintiff's complaint fails to mention racially motivated selective enforcement and indeed fails to identify any protected class under 42 U.S.C. § 1985.  *See O'Conner v. St. John's Coll.*, No. 07-2225, 2008 WL 3825922, at *141 (10th Cir. Aug. 18, 2008) (unpublished) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity.") (quotations omitted); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (reiterating that a 42

U.S.C. § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind the conspiracy) (quotations omitted).

### ii.    <u>RDP Regarding Personnel Records</u>

Plaintiff also served an RDP that asks the Ogden City Defendants to produce all their redacted personnel files for the past twelve years.  (Dkt. No. 81 at 3.)  The Ogden City Defendants oppose this RDP because "Plaintiff has offered no explanation how, based on the elements he must establish to prove his claims, this information is reasonably calculated to lead to the discovery of admissible evidence."  (*Id.* at 6.)  The Court agrees with the Ogden City Defendants' reasoning and will not speculate about the personnel records' relevance where Plaintiff failed to discuss such relevance.

### iii.    <u>RDP Regarding 911 Dispatch Communications</u>

Plaintiff served an RDP that asks the Ogden City Defendants to produce their 911 dispatch communications for the time around Plaintiff's July 20, 2011 arrest.  (Dkt. No. 81 at 3-4.)  The Ogden City Defendants oppose this RDP.  Eric Young, the Ogden City Police Department assistant chief, submitted an affidavit explaining that "Ogden City does not operate 911 or a dispatch system" and "does not create any" 911 or dispatch call recordings.  (Dkt. No. 81-6 ¶¶ 3-4.)  Instead, "Weber Area Dispatch 911 and Emergency Services District" is a "separate entity . . . that provides 911 services for entities located within Weber County, including Ogden City."  (*Id.* ¶¶ 5-6.)

Based on Young's affidavit, the Court will not compel the Ogden City Defendants to produce communications they "do not have possession, custody or control of . . . ."  (*Id.* ¶ 7.)

**B. Motion as it Relates to the Weber County Defendants**

**i.          RDP Regarding Prior Representation**

Plaintiff moves to compel (Dkt. No. 74 at 2) the Weber County Defendants to provide "ALL prior legal representations of . . . Weber County Correctional Facility . . . by your respective Law Firms . . . ." (Dkt. No. 83-1 at 3).

The Weber County Defendants oppose this RDP because "Plaintiff has not shown how knowing when [the Weber] County Defendants' counsel has represented them in the past has any relevance to this case." (Dkt. No. 83 at 3.) The Court agrees with the Weber County Defendants' opposition. The Court will not compel the Weber County Defendants to produce this information because the Court cannot determine its relevance.

**ii.          RDP Regarding Jail Surveillance Videos**

Plaintiff previously requested that the Weber County Defendants provide him with the surveillance videos from his July 2011 confinement at Weber County Correctional Facility. (Dkt. No. 83-1 at 2.) The Weber County Defendants informed Plaintiff that the "videos no longer exist[ed]." (*Id.*)

Due to the Weber County Defendants' failure to preserve these videos, Plaintiff now moves to sanction them. (Dkt. No. 74 at 2.) However, in a previous Report and Recommendation, the Court concluded that the Weber County Defendants had no duty to preserve the videos prior to their automatic overwrite. (Dkt. No. 117 at 4-6.) Therefore, the Court refuses to sanction the Weber County Defendants for failing to preserve the videos.

**III.          PLAINTIFF'S SECOND MOTION TO COMPEL**

Plaintiff moves to compel additional documents from the Weber County Defendants. (Dkt. No. 78.) For the reasons discussed below, the Court **DENIES** this motion.

**A. Request for August 17, 2011 Letter**

Plaintiff previously sent a records request to the following nonparties: (1) Dee W. Smith, the Attorney for Weber County, Utah; (2) Christopher F. Allred, the Deputy Attorney for Weber County, Utah; and (3) Rebecca Flint, a legal receptionist with the Weber County Attorney's Office. (Dkt. No. 88-1.) Plaintiff requested a copy of an August 17, 2011 letter that he allegedly wrote to Smith and to Defendant Thompson. (*Id.*)

Plaintiff now moves to compel the Weber County Defendants to produce this letter. (Dkt. No. 78.) The Weber County Defendants oppose Plaintiff's request. They correctly note that Plaintiff "cannot compel" them to produce "documents of non-parties in this matter." (Dkt. No. 88 at 3.) *See* Fed. R. Civ. P. 34(a) ("A *party* may serve *on any other party* a request . . . to produce . . . designated documents . . . .") (emphasis added).

Even if Plaintiff directed his original discovery request to the Weber County Defendants, they persuasively argue they should not be compelled to produce a letter that they never received. (Dkt. No. 88 at 3.) Indeed, in its previous Report and Recommendation, the Court concluded that Plaintiff had failed to show that the Weber County Defendants received this letter. (Dkt. No. 117 at 5-6.)

**B. Requests for Information about Government Funds and Personnel Files**

Plaintiff moves to compel the Weber County Defendants to disclose "the exact amount of money per day" they received from "the State of Utah and [the] Federal Government per [i]nmate housed at the Weber County Correctional Facility during July 2011[.]" (Dkt. No. 88-3.) Plaintiff also moves to compel the redacted personnel files for the Weber County Defendants for the past twelve years. (Dkt. No. 88-2.)

The Weber County Defendants provided Plaintiff their "available training records" for the past five years to satisfy Plaintiff's request for personnel files. (*Id.*) However, the Weber County Defendants oppose the remainder of Plaintiff's requests because he failed to show how the requested information is relevant to any of his claims. (Dkt. No. 88 at 4-5.)

The Court agrees with the Weber County Defendants' position. Other than making a sweeping reference to his 42 U.S.C. §§ 1985 and 1986 claims (Dkt. No. 78 at 2), Plaintiff fails to describe how the aforementioned information bears any relevance to proving such claims.

### C. Attorney's Fees

The Weber County Defendants seek attorney's fees for having to defend against Plaintiff's second motion to compel. (Dkt. No. 88 at 5.) The Court concludes that "other circumstances make an award of expenses unjust" where it appears pro se Plaintiff brought this motion in a good faith attempt to gather information rather than to harass anyone. Fed. R. Civ. P. 37(a)(5)(B).

### IV.  PLAINTIFF'S THIRD MOTION TO COMPEL

Plaintiff moves to compel the Ogden City Defendants to provide responses to two interrogatories that they previously objected to. (Dkt. No. 89.) Plaintiff's first interrogatory relates to the time period between July 20, 2011 and December 9, 2013. (*Id.*, Ex. A.) The interrogatory seeks "the complete list of SUSPECTS (Inclusive of Name, Age, Ethnic Group, and Alleged Charges for Arrest)" that Defendant Murray "transported to the Weber County Correctional Facility" and requested a strip search for. (*Id.*)

Plaintiff's second interrogatory relates to a list that the Ogden City Defendants previously gave to Plaintiff. (Dkt. No. 89, Ex. B.) The list identifies Ogden City Corporation's forty-four legal representations over the past ten years. (*Id.*) Plaintiff now moves to compel the Ogden

City Defendants to break down this list. (*Id.*) More specifically, Plaintiff wants the Ogden City Defendants to identify those representations that relate to civil rights suits, including any suits against Ogden City personnel, Ogden City Police Department personnel, and the named Ogden City Defendants. (*Id.*)

Identical to his first motion to compel, Plaintiff argues the aforementioned interrogatories are relevant to proving his 42 U.S.C. §§ 1985 and 1986 claims. (Dkt. No. 89 at 2-3.)

The Ogden City Defendants oppose Plaintiff's third motion to compel for the same reasons they opposed Plaintiff's first motion to compel. (Dkt. No. 91.) That is, they claim that Plaintiff failed to demonstrate how the aforementioned interrogatories are relevant to Plaintiff's single conspiracy allegation stemming from Defendant Murray's use of excessive force. Because the Court agrees with the Ogden City Defendants' reasoning, *see supra* Part II.A.i, the Court **DENIES** Plaintiff's motion to compel. (Dkt. No. 89.)

## V. PLAINTIFF'S FOURTH MOTION TO COMPEL

Plaintiff moves to compel further discovery responses from the Ogden City Defendants. (Dkt. No. 93.) For the reasons set forth below, the Court **DENIES** the motion.

### A. Request for Affidavits

Plaintiff previously requested Defendant Scott's dash camera recordings from Plaintiff's July 20, 2011 arrest. (Dkt. No. 96 at 3.) The Ogden City Defendants responded that Defendant Scott did not have a video camera in his vehicle at the time of the incident. (*Id.*)

Plaintiff now moves to compel Defendant Scott and an Ogden City Police Department property officer to submit affidavits confirming that Defendant Scott had no dash camera video recording equipment in his patrol car on July 20, 2011. (Dkt. No. 93 at 1.)

The Ogden City Defendants oppose Plaintiff's motion. (Dkt. No. 96.) They argue "there is nothing to compel" because they already responded to Plaintiff's discovery request. (*Id.* at 5.) They claim Plaintiff's subsequent "request for an affidavit is not a proper discovery request as it does not ask a question of a party or request documents." (*Id.*)

The Court agrees with the Ogden City Defendants' opposition. The Ogden City Defendants sufficiently responded to Plaintiff's original discovery request by informing him no dash camera recording existed for Defendant Scott. The Court sees no reason why the Ogden City Defendants must also submit affidavits confirming the recording's nonexistence.

### B.  Request for 911 Dispatch Communication Logs

Plaintiff again moves to compel the 911 dispatch communication logs between Defendant Scott, Defendant Murray, and Officer Copier from Plaintiff's July 20, 2011 arrest. (Dkt. Nos. 93 at 2; 96 at 2-3.)

Plaintiff claims he spoke with Tina Scarlet, the Director for Weber Area 911 Dispatch and Emergency Services District ("Weber Dispatch"). (Dkt. No. 93 at 2.) She allegedly told Plaintiff that the dispatch logs legally belonged to the Ogden City Police Department. (*Id.*) However, when Plaintiff submitted a records request for the logs to the Ogden City Police Department, the Department denied the request by claiming "[n]o record exist[ed] within Ogden City files." (*Id.*, Ex. H.)

The Ogden City Defendants oppose Plaintiff's motion. They reiterate that "Ogden City does not operate 911 or dispatch and does not create any 911 or dispatch recordings." (Dkt. No. 96 at 6.) They again claim they "do not have possession, custody or control of any recordings made by Weber Area Dispatch" because Weber Area Dispatch "is its own separate entity . . . ." (*Id.*)

The Ogden City Defendants also clarify Plaintiff's assertions about requesting the communication logs. Kim Gibson, the shift supervisor for Weber Area Dispatch, submitted an affidavit. In December 2013, she received a records request from Plaintiff for the logs. (Dkt. No. 96-8 ¶ 3.) However, Weber Area Dispatch "only keep[s] dispatch communications for approximately 12 months," and "no longer had the recordings" Plaintiff requested. (*Id.* ¶ 4.)

Angela Turner, the records supervisor with the Ogden City Police Department, submitted an affidavit stating she is in charge of records requests sent to the police department. (Dkt. No. 96-10 ¶ 1.) Turner confirms that Gibson forwarded Plaintiff's records request to her. (*Id.* ¶ 3.) Turner then informed Plaintiff that the Ogden City Police Department did "not have possession, custody or control of [the] dispatch communications." (*Id.* ¶ 7.) Because the Ogden City Police Department did not have the dispatch communications, Turner denied Plaintiff's records request. (*Id.* ¶ 8.)

To help Plaintiff out, Gibson printed out officer CAD logs that "log [] an officer's status as he or she is dispatched on different calls." (Dkt. No. 96-8 ¶¶ 8-9.) The CAD logs are not considered dispatch communications. (*Id.* ¶ 10.) However, Gibson lacked authority to release the CAD logs and informed Plaintiff to direct a request for the CAD logs to the Ogden City Police Department. (*Id.* ¶ 11.) Subsequently, the Ogden City Defendants provided Plaintiff with the CAD logs.

Based on the aforementioned affidavits, this Court concludes that the Ogden City Defendants have neither custody nor control over the 911 dispatch communication logs that Plaintiff moves to compel.

## VI. PLAINTIFF'S FIFTH MOTION TO COMPEL

Plaintiff moves to compel the Weber County Defendants to supplement responses to discovery requests they previously objected to. (Dkt. No. 95.) For the reasons stated below, the Court **DENIES** the motion.

### A. Unspecified Request for Supplemental Discovery

Plaintiff previously requested the following information from the Weber County Defendants:

> Weber County Correctional Facility Pre-Booking Information Sheet under Charge; Class; Warrant/Comm#; Statute; Bail Amount; etc . . . for the duplicate pages from the Weber County Correctional Facility . . . Policies & Procedures manual on the training provided to each Correctional Officer (Sheriff Deputies) in ensuring the Probable Cause Affidavit concerning the arrest and continued detention of Plaintiff and/or any detainee and the Weber County Correctional Pre-Booking Information Sheets are the current Utah Statutes for charging Detainees?

(Dkt. No. 95. Ex. A.)

The Weber County Defendants objected to Plaintiff's request because it was "unclear what exactly Plaintiff [was] asking." (*Id.*) Notwithstanding their objection, the Weber County Defendants provided Plaintiff with the Weber County Correctional Facility Policies relating to inmate admission and release. (Dkt. No. 97-1.)

Plaintiff now moves the Weber County Defendants to supplement their response. The Weber County Defendants oppose Plaintiff's request. (Dkt. No. 97.) After reviewing the record, the Court will not compel the Weber County Defendants to supplement their response. They already "attempted to cooperate with Plaintiff by responding to his discovery request." (*Id.* at 3.) However, they are understandably "unsure of what Plaintiff is attempting to compel" because Plaintiff completely failed to identify the supplemental discovery he seeks. (*Id.*)

**B. Request for Prior Grievances**

Plaintiff also moves to compel the Weber County Defendants to produce a list of Weber County citizens and detainees who, since July 2011, have filed civil rights grievances through the Weber County Jail grievance process and who have filed civil rights lawsuits.  (Dkt. No. 95, Ex. B.)  Plaintiff claims such information is relevant to his 42 U.S.C. §§ 1985 and 1986 conspiracy claims.  (Dkt. No. 95 at 1-2.)

The Weber County Defendants oppose this request as "irrelevant" because it "does not directly involve any of the events of Plaintiff's incarceration."  (Dkt. No. 97 at 4.)  The Court agrees with the Weber County Defendants.  Plaintiff's complaint brings 42 U.S.C. §§ 1985 and 1986 conspiracy claims against the Ogden City Defendants rather than the Weber County Defendants.  (Dkt. No. 23 at 35.)  Therefore, information about other grievances and suits brought against the Weber County Defendants bears no apparent relevance to Plaintiff's conspiracy claims against the Ogden City Defendants.

**C. Request to Correct Bates No. 249**

The Weber County Defendants previously supplemented their discovery responses by providing Plaintiff with Bates No. 249.  (Dkt. No. 95, Ex. C.)  Bates No. 249 appears to be a booking sheet that reflects the cells Plaintiff was placed in during his July 2011 confinement at Weber County Correctional Facility.  (*Id.*)

Plaintiff now moves the Weber County Defendants to "cure their Bates No. 249[] to reflect the true nature of Plaintiff's confinement within the Weber County Correctional Facility" between July 20, 2011 and July 21, 2011.  (Dkt. No. 95 at 2.)  Plaintiff claims Bates No. 249 intentionally omits the fact that Plaintiff was placed in Booking Area Cell B6.  (Dkt. No. 102 at 3.)

The Weber County Defendants oppose Plaintiff's request because they "are unaware of any documentation that shows Plaintiff spent time in any cell other than B13 during his time in booking." (Dkt. No. 97 at 5.) Therefore, they "cannot produce what Plaintiff is requesting because it does not exist." (*Id.*) The Weber County Defendants also state that they do not plan "to question whether Plaintiff spent time in any other cell within the booking area." (*Id.*) Rather, they only plan to use Bates No. 249 "to demonstrate what time Plaintiff entered and left the booking area . . . ." (*Id.*)

Given the circumstances described by the Weber County Defendants, the Court will not compel them to correct Bates No. 249.

### D. Attorney's Fees

The Weber County Defendants request their attorney's fees for having to defend against Plaintiff's motion. (Dkt. No. 97 at 4-5.) The Court concludes that other circumstances make an award unjust where it appears pro se Plaintiff brought this motion in good faith. *See* Fed. R. Civ. P. 37(a)(5)(B).

However, the Court warns Plaintiff that it will consider granting Defendants attorney's fees in the future if Plaintiff continues bringing similarly confusing motions to compel. This Court has struggled to make sense of Plaintiff's motions where they fail to clearly identify the discovery requests at issue and fail to set forth precise reasons why such discovery is relevant. *See* DUCivR 37-1(b) ("Motions to compel discovery . . . must be accompanied by a copy of the discovery request, the response to the request to which objection is made, and a succinct statement, separately for each objection, summarizing why the response received was inadequate.") In fact, this Court has had to rely almost exclusively on Defendants' oppositions to understand Plaintiff's arguments.

## VII.    ORDERS

For the reasons set forth above, the Court **DENIES** Plaintiff's motions to compel.  (Dkt. Nos.

74; 78; 89; 93; 95.)

Dated this 14th day of April, 2014.        By the Court:

                                           Dustin B. Pead
                                           United States Magistrate Judge