IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DAVID WEBB,<br><br>    Plaintiff,<br><br>v.<br><br>TIMOTHY SCOTT, et al.,<br><br>    Defendants. | MEMORANDUM DECISION<br><br>Case No. 1:11-cv-00128-DB-DBP<br><br>District Judge Dee Benson<br><br>Magistrate Judge Dustin B. Pead |

## I. INTRODUCTION

This civil rights matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B). Pro se Plaintiff is David Webb. The Court splits relevant Defendants into two groups. The Ogden City Defendants are the following: (1) Timothy Scott, a police officer with the Ogden City Police Department; (2) K. Murray, a police officer with the Ogden City Police Department; and (3) Jon J. Greiner, Chief of Police for the Ogden City Police Department.

The Weber County Defendants are the following: (1) Terry L. Thompson, the Weber County Sheriff; (2) Kevin McCleod, the Weber County Undersheriff; (3) Kevin Burton, the Corrections Division Chief Deputy for Weber County Correctional Facility; (4) R. West, a Sergeant at Weber County Correctional Facility; (5) R. Johnson, a Sergeant at Weber County Correctional Facility; and (6) A. Flatt, a correctional officer at Weber County Correctional Facility.

The Court now considers Plaintiff's: (1) motion for a protective order, (2) motion to amend the scheduling order, and (3) two motions to appoint counsel. (Docket Nos. 57; 75; 112; 126.)[1] For the reasons set forth below, the Court **DENIES** Plaintiff's motions.

## II.     PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Plaintiff moves for a protective order under Fed. R. Civ. P. 26(c)(1). Plaintiff wants to prevent Defendants from introducing certain evidence into the court record and at a jury trial. (Dkt. No. 112.) This evidence comes from interrogatory and deposition questions that Plaintiff already answered. (*Id.* at 2.)

Plaintiff claims this evidence discusses his: (1) criminal arrest history, (2) acts undertaken that led to criminal proceedings against him, (3) civil suit history, (4) family history/family relationship issues, (5) medical history regarding how he sustained injuries, (6) employment history, (7) tax return history, and (8) credit history. (*Id.*)

### A.  Portion of Plaintiff's Motion Premature

Defendants have not offered deposition or interrogatory answers regarding Plaintiff's family history/relationship issues, his tax return history, or his credit history. Similarly, Defendants have not offered evidence about Plaintiff's arrest history other than the arrest at issue in Plaintiff's complaint. Along the same lines, Defendants have not offered evidence about acts Plaintiff undertook that led to criminal proceedings except for those acts Plaintiff already mentions in his complaint. Therefore, this Court **DENIES** as premature this portion of Plaintiff's motion. (Dkt. No. 112.)

---

[1] In issuing this decision, the Court also considered the untimely and procedurally improper supplemental filings that Plaintiff submitted to support his original motions. (*See* Dkt. Nos. 98; 101; 108; 156.)

### B. Defendants Submitted Excerpts from Plaintiff's Deposition and Interrogatory Answers in Summary Judgment Proceedings

Subsequent to Plaintiff filing his motion for protective order, Defendants submitted some of the contested interrogatory and deposition answers in the context of summary judgment proceedings. Therefore, the Court now interprets Plaintiff's motion for a protective order as an objection to these submissions and as a request to strike the submissions.

*i.  Ogden City Defendants' Submissions*

To their summary judgment motion (Dkt. No. 130) and opposition (Dkt. No. 133) to Plaintiff's summary judgment motion (Dkt. No. 118), the Ogden City Defendants attached excerpts from Plaintiff's deposition and interrogatory answers. (Dkt. No. 130-4, Ex. D; Dkt. No. 130-7, Ex. G; Dkt. No. 133-4, Ex. D; Dkt. No. 133-5, Ex. E.)

The deposition answers discuss the circumstances surrounding the wrist injuries Plaintiff sustained when Defendant Murray handcuffed him too tightly. (Dkt. No. 130-4, Ex. D; Dkt. No. 133-4, Ex. D.) The interrogatory answers also discuss these wrist injuries. (Dkt. No. 130-7, Ex. G; Dkt. No. 133-5, Ex. E.) One interrogatory answer briefly lists Plaintiff's past medical injuries unrelated to those caused by Defendant Murray. (*Id.*) Another interrogatory answer identifies the past civil and criminal actions in which Plaintiff acted a party. (*Id.*) A different interrogatory answer lists Plaintiff's past employers. On this last point, the answer only lists employer names and locations. (*Id.*) The answer omits dates of employment, descriptions of the employment, and reasons for employment termination, if any. (*Id.*)

*ii.  Weber County Defendants' Submissions*

To their summary judgment motion (Dkt. No. 161) and opposition (Dkt. No. 137) to Plaintiff's summary judgment motion (Dkt. No. 118), the Weber County Defendants attached excerpts from Plaintiff's deposition. (Dkt. Nos. 137-4; 161-4.) The deposition answers

reference the wrist injuries Plaintiff sustained during his arrest. (Dkt. No. 137-4.) They also detail a wrist injury Plaintiff suffered several years ago. (Dkt. No. 161-4.) One deposition answer briefly references Plaintiff's civil suit against his family over his deceased father's estate. (*Id.*)

**C. Court Need Not Protect Information Offered in Summary Judgment**

For "good cause," a court "may" grant a protective order to "a party . . . from whom discovery is sought" to protect the party from "annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).

Plaintiff asks the Court to grant him a protective order that essentially strikes the disputed discovery responses from the summary judgment record. Plaintiff believes the responses bear "marginal" relevance to the case. (Dkt. No. 112 at 3.) For instance, Plaintiff argues his employment history lacks relevance because he "will not seek compensatory damages based on lost income." (*Id.* at 5.) Plaintiff also indirectly attacks the relevance of his civil and criminal case history. (*See id.* at 3-4) (discussing irrelevance of criminal arrest history).[2]

At this juncture, the Court interprets Plaintiff's relevance arguments as arguments about whether the disputed discovery responses affect the parties' abilities to meet the summary judgment standard. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

In this summary judgment context, the Court "is able to sift through evidence submitted by the parties and make determinations about the admissibility, relevance, and weight of the

---

[2] As an aside, the Court notes that, within their summary judgment motions and oppositions to Plaintiff's summary judgment motion, Defendants only reference those disputed discovery responses relating to Plaintiff's medical injuries. Defendants do not reference Plaintiff's employment history or his criminal/civil case history.

evidence without the need to strike the evidence from the record." *Sears v. Jo-Ann Stores, Inc.*, No. 3:12-1322, 2014 WL 1665048, at *4 (M.D. Tenn. Apr. 25, 2014) (denying motion to strike irrelevant filing submitted with summary judgment motion). *See also Ohio State Univ. v. Skreened Ltd.*, No. 2:12-cv-662, 2014 WL 1576882, at *13 (S.D. Ohio Apr. 18, 2014) ("The Court need not strike the targeted content [included in a summary judgment briefing] but can . . . address[] the relevant portions of the briefing on their merits (or lack thereof).").

In light of this persuasive case law, the Court concludes that it need not strike the disputed discovery responses from the summary judgment record. *See also In re Agent Orange Prod. Liab. Litig.*, 98 F.R.D. 539, 545 (D.C.N.Y. 1983) ("[D]ocuments attached to and referred to in the parties' papers on [] summary judgment motions are part of the court record and are entitled to [a] presumption of public access.").

Instead, when the Court adjudicates the parties' summary judgment motions, the Court will assess whether the disputed discovery responses are relevant. The Court will then incorporate only those relevant response portions (if any) into its summary judgment decision. Given this analysis, the Court **DENIES** the remainder of Plaintiff's motion for protective order. (Dkt. No. 112.)

### III. PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER

On December 18, 2013, Plaintiff filed a motion to amend the scheduling order that he earlier stipulated to. (Dkt. No. 75.) Plaintiff moved to extend the October 1, 2013 deadline to amend pleadings and add parties so that he could add unspecified parties and claims to his complaint. (*Id.* at 2.) He also moved to extend the January 15, 2014 fact discovery deadline because the Court could not rule on Plaintiff's motions to compel before the deadline expired. (*Id.* at 1.)

**A. Motion to Amend Discovery Deadline Based on Motions to Compel**

After Plaintiff filed his motion to amend the scheduling order, the Court denied Plaintiff's motions to compel. (Dkt. No. 136.) Therefore, no good cause exists to amend the fact discovery deadline as it relates to those motions. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Accordingly, the Court **DENIES** this portion of Plaintiff's motion. (Dkt. No. 75.)

**B. Motion to Amend Discovery and Pleadings Deadlines Based on CAD Logs**

On February 10, 2014, Plaintiff supplemented his original motion to amend the scheduling order. (Dkt. No. 98.) He now bases his motion to amend on the CAD logs that the Ogden City Defendants provided to him.

CAD logs "are simply a log of an officer's status as he or she is dispatched to different calls . . . ." (Dkt. No. 100 at 2.) Plaintiff claims the CAD logs show that Defendant Murray conducted eight other traffic stops on the night of Plaintiff's arrest. (Dkt. No. 98 at 1.) Plaintiff believes that Defendant Murray conducted these other stops as "a possible pretext" to arrest the drivers for "outstanding warrants and any other crimes committed in [Defendant] Murray's presence without probable cause . . . ." (*Id.*)

Therefore, Plaintiff wants to amend the discovery deadline to conduct additional discovery about these other stops. He believes such discovery will illustrate the Ogden City Defendants' "Custom/Practice and Policy of violating Citizens Rights based on Race covered-up by Conspiracy to violate such Rights without Probable Cause to initiate these Traffic Stops." (*Id.* at 2.) From what this Court can gather, Plaintiff wants to extend the deadline to amend pleadings and add parties because he believes this future discovery will allow him to flesh out a race-based selective enforcement claim. (*Id.*)

Defendants oppose Plaintiff's motion to amend the scheduling order. (Dkt. Nos. 80; 84; 100; 104.) The Ogden City Defendants note that Plaintiff never requested the CAD logs in discovery. (Dkt. No. 100 at 2.) Instead, they provided Plaintiff the CAD logs after fact discovery closed "in the spirit of cooperation . . . ." (*Id.*) They argue "there is no evidence that the other prior stops that night . . . were 'a possible pretext' or that they relate to Plaintiffs [sic] claims." (*Id.*) As such, Plaintiff has failed to meet the "standard for reopening discovery . . . ." (*Id.*)

The Court agrees with Defendants. Plaintiff alleges that the CAD logs demonstrate Defendant Murray's pre-textual traffic stops. However, Plaintiff offers no explanation or evidence for how the CAD logs support this claim. In sum, Plaintiff wants to amend the scheduling order because Defendant Murray, whose job was to enforce the traffic laws, conducted other traffic stops the night he arrested Plaintiff.

The Court concludes that Plaintiff's conclusory allegation about the CAD logs does not constitute good cause to amend the scheduling order. As such, the Court **DENIES** this portion of Plaintiff's motion to amend the scheduling order. (Dkt. No. 75.)

**C. Motion to Amend Pleadings Deadline Based on Malicious Prosecution Claim**

On February 24, 2014, Plaintiff again supplemented his motion to amend the scheduling order. (Dkt. No. 108.) Plaintiff now wants to extend the scheduling order deadline to amend pleadings so he can add a 42 U.S.C. § 1983 malicious prosecution claim to his complaint.

Plaintiff believes he can support a malicious prosecution claim because: (1) "[n]o probable [c]ause supported [Plaintiff's] original arrest, continued confinement, or prosecution"; (2) "Defendants caused [] Plaintiff's continued confinement or prosecution"; (3) "[t]he original action terminated in [Plaintiff's] favor"; (4) "Defendant[s] acted with malice[,] [t]he malice . . . is detailed in Plaintiff's SECOND AMENDED COMPLAINT"; and (5) "Plaintiff sustained

damages . . . detailed in . . . Plaintiff's SECOND AMENDED COMPLAINT[]." (Dkt. No. 108 at 2.)

However, Plaintiff cited all these aforementioned allegations in his second amended complaint, which he filed on May 15, 2013. (*See generally* Dkt. No. 23) (discussing lack of probable cause for arrest, unlawful detention, and prosecutor's decision to strike charges against Plaintiff.)  In other words, Plaintiff possessed the underlying facts to support his malicious prosecution claim five months before the October 1, 2013 deadline to amend pleadings.

Plaintiff offers no persuasive explanation for why he unduly delayed his request to add a malicious prosecution claim until February 24, 2014 – nine months after filing his second amended complaint. *See Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (noting leave to amend a pleading should be freely given unless otherwise precluded by the movant's "undue delay, bad faith or dilatory motive[,] . . . repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party . . . .") (citation omitted).

Given these circumstances, the Court finds insufficient good cause to amend the pleadings deadline in the scheduling order.  Therefore, the Court **DENIES** this portion of Plaintiff's motion to amend the scheduling order. (Dkt. No. 75.)

IV.     **PLAINTIFF'S MOTIONS TO APPOINT COUNSEL**

The Court already denied Plaintiff's three previous requests to appoint counsel. (Dkt. Nos. 10; 16; 20; 22.) Despite this, Plaintiff brought two new motions to appoint counsel. (Dkt. Nos. 57; 126.) Plaintiff believes he should receive counsel because Defendants spoliated evidence. (*Id.*) He also believes he should receive counsel because he has struggled to comply with procedural requirements in the past. (Dkt. No. 126 at 3.)

The Weber County Defendants oppose Plaintiff's motions to appoint counsel because the Court is currently considering the parties' summary judgment motions. (Dkt. No. 135.) They believe "[a]ppointing counsel at this stage would only serve to slow the process down and unnecessarily delay this case." (*Id.* at 2.)

The District Court already denied Plaintiff's spoliation motions. (Dkt. No. 158.) Therefore, Plaintiff cannot base his motions to appoint counsel on this ground. This Court also agrees with the Weber County Defendants' opposition. The parties have completed discovery and the Court is currently adjudicating their summary judgment motions. Appointing Plaintiff counsel may delay resolution on these dispositive motions. Therefore, the Court **DENIES** Plaintiff's motions to appoint counsel at this time. (Dkt. Nos. 57; 126.)

## V. ORDERS

For the reasons discussed above, the Court issues the following **ORDERS**:

The Court **DENIES** Plaintiff's motion for a protective order. (Dkt. No. 112.)

The Court **DENIES** Plaintiff's motion to amend the scheduling order. (Dkt. No. 75.)

The Court **DENIES** Plaintiff's motions to appoint counsel. (Dkt. Nos. 57; 126.)

Dated this 14th day of May, 2014.

By the Court:

Dustin B. Pead
United States Magistrate Judge